PUTNAM v. JACKSONVILLE, L. & ST. L. RY. CO. et al.

(Circuit Court, S. D. Illinois. December 8, 1893.)

1. APPOINTMENT OF A RECEIVER OF RAILWAY.

Upon bill to foreclose railway mortgage, and for appointment of a receiver, filed by a bondholder, alleging that the mortgagor railway company had made default in the payment of taxes lawfully levied and im-

posed upon the railway premises, and that, in certain counties, it suffered and permitted its railroad to be sold for such taxes, and alleging that the mortgagor is hopelessly insolvent, and unable to pay its present and accruing indebtedness, and that it has failed, neglected, and refused to pay wages and operating expenses, and other obligations and indebtedness, amounting to more than $200,000, and alleging that complainant, upon discovering such facts, applied to the trustee to take action, and that the trustee has failed and neglected to take any steps, *held*, that a case was made for the appointment of a receiver.

**2.** SAME—CLAIM FOR LABOR AND SUPPLIES.

In view of the rule of Fosdick v. Schall, 99 U. S. 235, and later cases, giving claims for labor and supplies a preference over the mortgage debt, a bondholder has a right to apprehend that his interest will suffer in that respect if such claims are allowed to remain in arrears.

**3.** SAME.

Intervening petition of persons holding labor claims, which have not been reduced to judgment, *held* not to show grounds for appointing a receiver, although such claims are against three railway companies, or one of three railway companies, whose lines are operated together as one line under a common name, and there is a complication or confusion of accounts between such companies.

**4.** SAME—BILL FOR AN ACCOUNTING.

Semble, that a bill for an accounting, under any ordinary circumstances (in this case, by receivers of one of the railway companies whose railways are operated under a single management, and as a single line, for an accounting of such joint management), does not warrant the appointment of a receiver until the account has been adjusted, and a liability established.

This was a motion by complainant, Henry W. Putnam, a holder of bonds secured by mortgage from the Jacksonville, Louisville & St. Louis Railway Company to the Finance Company of Pennsylvania, upon his sworn bill of foreclosure, for the appointment of a receiver of the railway and premises and property covered by such mortgage; also, application for a receiver, of certain intervening petitioners, employes of the Jacksonville Southeastern Line, of which the defendant railway company was a part; and also the application for a receiver, upon their intervening petition, of the receivers of the Chicago, Peoria & St. Louis Railway Company, which road was also a part of the Jacksonville Southeastern Line.

The Chicago, Peoria & St. Louis Railway Company was owner of about 168 miles of railway, extending from Pekin, Ill., through Havana, to Jacksonville, Ill., with a line from Havana to Springfield, and a line of railway from Litchfield to East St. Louis, which latter line was disconnected from the former lines. The Jacksonville, Louisville & St. Louis Railway Company was the owner of the line of railway extending from Jacksonville, Ill., through Litchfield, to Centralia,—a distance of about 112 miles. The Litchfield, Carrollton & Western Railway Company was the owner of the line of 52 miles of railway extending from Barnett, Ill., westerly, to Columbiana, on the Illinois river. These lines of railroad were under one management, and were operated together under the name of the Jacksonville Southeastern Line. There appeared to be, however, no express agreement between the companies, providing for such joint operation, or for the terms thereof. The business was conducted in the name of the Jacksonville Southeastern Line. The employes were employed by the management under this name.

Article 2 of the mortgage in question, from the Jacksonville, Louisville & St. Louis Railway Company to the Finance Company of Pennsylvania, provided that "until default shall be made by said party of the first part, its successors or assigns, in the payment of interest or principal of said bonds, or in the due observance of the covenants and agreements hereinafter contained on the part and behalf of the said first party of the first part, said party of the

first part, its successors and assigns, shall be suffered and permitted to remain in the actual possession of said railway and premises, and to exercise the franchises and rights relating thereto, and to collect, receive, and use the revenues and profits thereof in any manner which will not impair the lien created by these presents." And the mortgagor thereby covenanted that it (the mortgagor), remaining in the possession of said railway and premises, should and would keep the said railway in good order, and safe running condition, and should and would, from time to time, pay and discharge all taxes, assessments, and governmental charges lawfully imposed upon said railway and premises, so that the priority of said mortgage might be duly preserved, and that said mortgagor would not do or suffer any act or thing whatever whereby the lien of said mortgage might or could be impaired, until said bonds, and all interest thereon, should be fully paid and satisfied. Article 3 of the mortgage provided that in case default should be made in the payment of any installment of interest upon said bonds, or any of them, when such interest should become due and be demanded, and such interest, or any part thereof, should remain unpaid and in arrears for six months, or in case default should be made in the due observance and performance of the covenant of further assurance in said mortgage, or in the payment of any taxes, assessments, or other governmental charges which might be lawfully levied or imposed upon said railway or premises, or any part thereof, and either of said defaults should continue for six months, or in case default should be made in the payment of the principal of said bonds, or any of them, then it should be lawful for said trustee or enter into and upon the said railway and premises, and the same to have, hold, and enjoy, operating said railway, making such repairs, replacements, and improvements thereto as the trustee might deem expedient, and to collect and receive all revenues and profits, and after deducting expenses and payments for taxes and assessments, or other charges or liens prior to such mortgage, to apply the revenues and profits to the payment of interest as therein provided. Article 5 provided that in case default should be made in any installment of interest, and such interest should remain unpaid and in arrears for six months, the principal of each and all of said bonds might be declared by said trustee, or by a majority in interest of the holders of all of said bonds outstanding, to be, and should become and be, due and payable immediately. Article 6 provided that in case default should be made in the payment of interest upon any of said bonds when such interest should become due, and be demanded, and such default should continue for six months, or in case default should be made in the payment of the principal of said bonds, it should be the duty of the trustee to take appropriate proceedings, at law or in equity, to enforce the rights of the holders of said bonds, upon a requisition signed by holders of at least one-third in amount of said bonds outstanding.

The bill of complaint of Putnam, which was filed December 7, 1893, alleged that said mortgagor railway company had made default in the payment of taxes lawfully levied upon said railway and premises, and that said default had continued for more than six months prior to December 1, 1893, and still continues; that on May 8, 1893, said mortgagor railway company, being in default in the payment of its taxes due for the year 1892 in Clinton county, Ill., suffered and permitted its road to be sold for such taxes, and the same was sold, as provided by law, to one Keshner, for the sum of $1,302.84; that said railway company did not pay the taxes lawfully levied upon said railway and premises in Macoupin county, Ill., for the year 1892, amounting to $2,538.35; and that, by reason thereof, penalties to the amount of $634.59, costs and interest to the amount of $51.03, had accrued, and that by reason of such failure said railway and premises in said county were forfeited to the state of Illinois, and that said taxes, penalties, costs, and interest in said counties are still due and unpaid, and that in both of said counties such default had continued for more than six months, and that said mortgagor railway company is, and for more than six months prior to December 1, 1893, has been, in default for taxes lawfully levied and imposed upon such railway and premises for the years 1890 and 1891, in various counties in Illinois through which said railway extends; that penalties, costs, and interest have accrued upon the same; and that the railway and premises of said company have, in some of

the counties through which it extends, been sold, and in others forfeited to the state of Illinois, for and on account of such taxes. The bill alleged that said mortgagor railway company is hopelessly insolvent, and unable to pay its debts and current and presently accruing indebtedness; that it has failed and refused to pay wages and operating expenses, and other obligations and indebtedness, although the payment thereof has been duly demanded; that such unpaid indebtedness in arrears amounts to more than $200,-000, and that said railway company will be unable to pay the interest upon the bonds secured by said mortgage which will fall due January 1, 1894, amounting to $32,500; and that said railway company has failed and neglected to keep its said railway in good order and safe running condition, but has suffered and allowed the same to become and remain, and it now is, in bad order, and unsafe running condition. The bill further alleged that complainant ascertained the facts alleged in said bill of complaint as to such defaults about December 5, 1892, through his solicitor, in Chicago; that thereupon said solicitor advised him of such facts, whereupon, on December 7, 1893, complainant communicated with said trustee in said mortgage, and advised said trustee of said default of said railway company, and of its insolvency, and of the necessity of action on the behalf of the bondholders for the protection of the lien and security of said mortgage, and requested said trustee to take proper steps for the protection of the interests of the bondholders represented by it, and to institute legal proceedings for the appointment of a receiver to conserve and protect the interests of said bondholders, and that said trustee has failed and neglected to take any steps in the premises; and that, thereupon, complainant was advised by counsel, and avers, that it is necessary for the protection of the lien and security under said mortgage, and of the rights of the holders of said bonds, to apply to a court of equity for relief in the premises, to the end that said property be conserved, and the rights and interests of complainant and other bondholders protected.

The intervening petition of the employes stated the amounts owing to them under their employment by the Jacksonville Southeastern Line; but such claims were not in judgment. The petition of the receivers of the Chicago, Peoria & St. Louis Railway Company alleged the joint operation of said lines of railroad under the name of the Jacksonville Southeastern Line; that the books were kept under that name; that moneys belonging to said Chicago, Peoria & St. Louis Railway Company had been used by the management to pay indebtedness of said Jacksonville, Louisville & St. Louis Railway Company; that the books of account of the fiscal transactions of said Jacksonville Southeastern Line had been so conducted as to be misleading; that the Chicago, Peoria & St. Louis Railway Company had been wrongfully charged with divers items, and that the Jacksonville, Louisville & St. Louis Railway Company had not been charged with items for which it was chargeable; that an accounting between said companies, and of the affairs of said Jacksonville Southeastern Line, was necessary,—and also alleged the defaults in the payment of taxes, and tax sales and forfeitures, which are alleged in said bill of complaint of said Putnam.

Upon bill of complaint of the Mercantile Trust Company, Trustee, v. Chicago, Peoria & St. Louis Railway Company, and upon certain intervening petitions consolidated therewith, the court had previously appointed receivers of the Chicago, Peoria & St. Louis Railway Company, and included in such receivership the Jacksonville, Louisville & St. Louis Railway, and the other railways above mentioned, composing the Jacksonville Southeastern Line; and upon the petition and motion of the Jacksonville, Louisville & St. Louis Railway Company for the release of its railway from such receivership, and the restoration to it of its property by such receivers, such motion was sustained by the court. But before such restoration was consummated or directed the present application for a receiver of the Jacksonville, Louisville & St. Louis Railway Company was made and heard.

W. D. Guthrie and Peck, Miller & Starr, for complainant.

C. M. Osborn and I. L. Morrison, for defendant Jacksonville, L. & St. L. Ry. Co.

*Gardner & McFadon,* for defendant Finance Co. of Pennsylvania.
Bluford Wilson, for intervening petitioners.

Before WOODS, Circuit Judge, and ALLEN, District Judge.

WOODS, Circuit Judge (orally, after stating the facts). This case, as now presented, rests on the bill of Mr. Putnam, a bondholder, and the intervening petition of labor claimants, and of the receivers in the case of The Mercantile Trust Company v. Chicago, Peoria & St. Louis Railway Company.[1] I do not think that the petition of the laborers, in itself, affords ground for appointing a receiver. What I said concerning their attitude in the other case is applicable here. They are simply creditors of the three companies. There is no obstacle to their enforcing their remedy at law against all the companies liable, if they can get them all into court at the same time, or against any of them separately; and, so far as they are concerned, the complications that arise out of the joint liability of the several companies are entirely immaterial. Their remedy is direct and easy. The fact remains, however, that, as between the companies concerned, there is complication or confusion of accounts to an extent that needs disentanglement, and there is force in the proposition, as a mere collateral consideration, that the existence of these accounts, and their character, lend support to the application for the appointment of a receiver, though furnishing, as already said, no legal ground for such action.

The bill or petition of the receivers of the other road presents, or would present, if there were necessity to determine the question, a more important and difficult inquiry. It shows the necessity of an accounting between these two companies, growing out of the operation of their roads under the joint arrangement which has heretofore prevailed; and I suppose the averments are sufficient to make a case for an accounting in equity. But whether, on such a bill, before any liability has been established, a court of equity ought to appoint a receiver, I think quite doubtful. I am inclined to believe, though not committing myself or the court to the proposition, that a bill for an accounting, under ordinary circumstances, does not warrant the appointment of a receiver until the account has been adjusted, and a liability established. But this, again, it is urged, though not itself a cause for an appointment of a receiver, furnishes strong support for the application, if otherwise well founded. If the Jacksonville road is allowed to go out of court as a corporation in the independent control of its own officers, the jurisdiction of this court over the question of an accounting would perhaps be lost. These receivers, in order to enforce any remedy against that corporation, would probably have to go into a state court. I suppose there is no doubt of that; and the fact affords a strong motive, though not legal cause, for this court's retaining possession, if it has and can hold, or ought to take, the possession. Theoretically, we are asked to take possession. By the order that

---

[1] 61 Fed. 372.

we made the other day for the surrender of this line by the receivers in the other case, the property is theoretically in the hands of the company, though actually yet in the custody of the court; and it is a question now of retaking possession by appointing a receiver in this case.

This brings us to the bill of the complainant, Putnam. On its face, this bill is sufficient, we think, to justify the appointment of a receiver. By the terms of the mortgage which the complainant, as one of the bondholders, seeks to enforce, the mortgagor was bound to pay taxes, and save the railroad company from default in that respect. It is alleged that such defaults have occurred. In respect to two counties, the details and the amounts involved are stated; and it is averred, in general terms, that in the other counties through which the road runs similar defaults have occurred. I agree with counsel that it was competent for—and, under the circumstances, the burden was fairly thrown on—the respondent to show that there were no such defaults as are generally alleged, or that they were of slight significance, or for small amounts, if such are the facts. It is further alleged in the bill that the company is insolvent, the averment being of an indebtedness exceeding $200,000, of which the answer admits as much as $90,000; and it appears that within a short time there will be an installment of interest due on the bonded or mortgage debt amounting to about $40,000. It is further averred that labor claims are unpaid, the showing in that respect being of a liability to the amount of $45,000. This company is liable for that amount, though its share of the debt, if equitably distributed between it and the other companies, is only 30 per cent. of that sum. Do these facts establish such insolvency as to justify the appointment of a receiver? The default in respect to taxes, and the significance of such defaults, have been strongly presented; and, to men familiar with affairs, such delinquencies are necessarily significant. The penalties that arise from failure to pay taxes; the enormous interest in the form of penalties,—imply that the failure to discharge the liability came from a stress of circumstances practically impossible to be overcome.

There is another phase of this growing indebtedness of the company in which the mortgagees or bondholders are interested. By the law, as it has grown up under the case of Fosdick v. Schall, 99 U. S. 235, and later cases, establishing what is known in this circuit as the "six-months rule," claims for labor and supplies, if not otherwise provided for, become entitled to preference over the mortgage debt. They, perhaps, do not constitute—I do not think they constitute—a lien on the property, such as to entitle the holders of them to apply for a receivership without first having established their demands. If such claims constituted a fixed or certain lien, their holders might be entitled to have receivers appointed to take care of their interests. But while there is not, strictly speaking, a lien, there is a preferential right, which may be enforced against the mortgaged property, if there be no other means of payment; and consequently, to the extent that such demands are permitted to accumulate, the rights of the mortgagee are liable to be postponed. This

bondholder, therefore, has a right to apprehend that his interest will suffer in that respect; and even if the delinquent taxes were paid, as it has been suggested they might be, that element of danger to his rights would not be eliminated. I cannot escape the conviction that practically this road is insolvent, and to such a degree as to require the interference of the court.

There is force in the suggestion of counsel that the troubles of the company have come from the general financial stress. But it is from financial stress peculiar to the debtor, or affecting business generally, that insolvency is wont to happen; and, looking at the situation of the country as it is, there is no present promise or clear prospect of a recurrence of good times, and there may be ground for apprehending yet worse before the coming of better conditions. On the whole case, it is evident that it is better for all interests that the matters in dispute be kept within the control, and that the adjustment of the liabilities between these companies should be settled under the supervision, of one court. The case is in such shape that we may assert jurisdiction, and I believe the best interests of all parties, as well as of the public, will be promoted by the exercise of our authority. We will therefore grant this petition.

There is another fact, somewhat aside, but important. It appears that the existing receivership, thus far, has been beneficial. Under the prior management, there had been default in the payment of current expenses for three or four months, amounting to about $140,000. One hundred thousand of that has been extinguished, and current expenses since the receivership have been paid; so that in less than three months the earnings of the road under the receivers have been sufficient to pay the operating expenses for nearly six months, and, with continued prosperity and successful management, the receivers, after a little while, may be discharged, and the roads returned to their owners. I think the proposition of separate receivers for the two roads is the right one.